## FORD MOTOR CO. v. STATE INDUSTRIAL COM. et al.

No. 23015. Opinion Filed May 3, 1932.

Everest, McKenzie, Halley & Gibbens, for petitioner.

Emerson & Carey, for respondents.

KORNEGAY, J. This is an original proceeding to review an award of the Industrial Commission, made on the 7th of October, 1931, which is as follows:

"1. That claimant herein, on the 22 day of July, 1930, was in the employment of this respondent and engaged in the performance of manual labor as defined by the Workmen's Compensation Law.

"2. That arising out of and in the course of such employment with respondent herein, claimant sustained an accidental personal injury on July 22, 1930, by injuring eye with piece of flying steel.

"3. That the average daily wage of claimant at the time of said injury was $7.50 per day.

"4. That by reason of said injury the claimant was temporarily totally disabled from July 23, 1930, to September 1, 1930, or for a total of five weeks and one day, beyond the five days' waiting period, for which he has been paid compensation at the rate of $18 per week, or the total sum of $93.

"5. That, as a result of said aforementioned accidental injury, claimant has a permanent partial disability of 10 per cent. loss of vision of the right eye, and total loss of vision of his left eye, having an average, taking both eyes into consideration, of 55 per cent. loss of vision of both eyes.

"The Commission is of the opinion: That under section 7290, paragraph 1, C. O. S. 1921, as amended by the Session Laws of 1923, the loss of both eyes constitutes permanent total disability, for which compensation is provided under the law for a period of 500 weeks; that under section 7290, subsection 4, for percentage loss of use of sight of an eye is provided for by that portion of the number of weeks as provided in the schedule for the loss of a member of sight of an eye which the partial loss of use thereof bears to the total loss of use of such member of sight of an eye. That ten per cent. loss of vision of the right eye and total loss of vision of the left eye would be equivalent to 55 per cent. loss of both eyes, and that claimant is entitled, under the law, to compensation at the rate of $18 per week, for a period of 275 weeks or the total sum of $4,950.

"It is therefore ordered: That within 15 days from this date the respondent, Ford Motor Company, pay the claimant, E. J. Poole, compensation at the rate of $18 per week, for a period of 275 weeks, in the total sum of $4,950, on account of the permanent injury to said claimant's eyes as above set out.

"It is further ordered: That within 30 days from this date, the respondent file with the Commission receipt or other report evidencing compliance with the terms of this order.

"It is therefore ordered: That the firm of Emerson & Carey have a lien on the award herein ordered to be paid in the sum of $500, as a fair and reasonable attorneys' fee in this case, and the respondent is ordered to pay to said Emerson & Carey, out

of the award herein ordered $500, as a fair and reasonable attorney fee."

A brief has been filed on behalf of the petitioner, and in the brief the position is taken that the loss of vision in the left eye does not come within the statute, for the reason that he received no injury that would cause the loss of vision. A record of the hearing and of the evidence is recited, and it appears that the attorneys are claiming that the evidence did not warrant the finding.

There were five expert witnesses, part introduced by the respondent, and part introduced by the claimant. There seems to be little dispute as to the condition of the eye at the time of the award. Neither is there any practical dispute as to the condition of the eye, as far as blindness is concerned, immediately following the accident, which consisted in a piece of metal of some kind hitting the claimant in the neighborhood of the right eye and the bridge of the nose, and which resulted in practically total blindness at the time, and for several days thereafter, in both eyes.

It is claimed by some of the experts that the weakened condition of the left eye, as found by examination, resulted from something that had happened before this accident, though practically everyone admits that the blindness in the eye could have been caused by the accident. The testimony of the claimant is that there was nothing wrong with his left eye before the accident, and that immediately afterwards he was blind, not only in that eye, but in the other one.

Two of the experts attributed the blindness in the left eye to the blow over the right eye and the bridge of the nose. The others were in doubt. All conceded that the blindness could have come from a slight hemorrhage in the left eye, though, owing to the vitreous opacities that were there, some of the experts claimed that this slight hemorrhage did not exist. The testimony of one of the acquaintances of the claimant, that frequently saw him about his boarding place, showed an inflamed condition of the left eye after the accident, though this was denied by some of the doctors.

Some cases are cited from this and other courts, concerning an inference from an inference, and one case, Kansas City Structural Steel Co. v. Yarber, 153 Okla. 121, 5 P. (2d) 160, decided by this court on the 17th of November, 1931, wherein an award was reversed for loss of vision in both eyes, as not being sustained by the evidence. Evidently in that case, the Wasserman test was positive. In the present case, the Wasserman test is negative, and it is claimed here that the vitreous opacity test was equally positive with that of the Wasserman. The argument is made that the blindness was of long standing on account of these vitreous opacities. There are some cases cited about expert testimony being required in a case of this kind.

As applied to the evidence in the case, all of which has been examined, it appears that if the claimant is to be believed, blindness immediately followed the accident, which did not exist before, and also the left eye was considerably inflamed, as detailed by a lay witness. Some of the experts attributed the loss of vision in the left eye to the accidental injury. Practically all of them, while not being able directly to account for it, admitted that it was possible that the loss of vision was the result of the accidental injury, though some of the experts, that apparently were well trained, argued that by reason of these vitreous opacities, the blindness was of long standing.

Under these conditions, the Commission was called upon, by operation of law, to make a finding of fact. It saw the witnesses and observed them. It applied one of the natural rules of deduction, that is to say that, nothing wrong before, immediately followed by that which was wrong, the disordered condition would be attributed to the accompanying accident, and found accordingly. If the experts are to be followed, the Commission chose rather to follow the deduction of some of the experts over the others. Under these conditions, the award was made. The award is supported by sufficient legal evidence, and is based on findings of fact made by the Industrial Commission.

The award is affirmed.

LESTER, C. J., and CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. CLARK, V. C. J., and RILEY and HEFNER, JJ., absent.